

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA

v.

**SUPERSEDING INDICTMENT**
Criminal No. 3:23cr99-HTW-FKB

ROBBIE REESE
a/k/a Robbie Agee

18 U.S.C. § 641
18 U.S.C. § 1957

The Grand Jury Charges:

### GENERAL ALLEGATIONS

At times relevant to this Indictment:

1. On March 23, 2020, President Donald J. Trump declared the coronavirus disease outbreak to be a national emergency, as defined in Title 42, United States Code, Section 5122(a). Thereafter, the 116th United States Congress passed a number of laws aimed at alleviating the economic strain occasioned by the pandemic.

2. The Coronavirus Aid, Relief, and Economic Security Act (CARES Act), enacted on March 27, 2020, provided in part for an Employee Retention tax Credit (ERC) that was designed to encourage Eligible Employers to keep employees on their payroll despite experiencing an economic hardship related to COVID-19. Eligible Employers could claim the ERC, equal to 50% of $10,000 in qualified wages per employee (i.e., $5,000 per employee), on wages paid after March 12, 2020, and before January 1, 2021.

3. Eligible Employers were those businesses, including tax-exempt organizations, with operations that were fully or partially suspended due to governmental orders due to COVID-19 or that had a significant decline in gross receipts compared to 2019.

4.      Eligible Employers could get immediate access to the ERC by reducing their employment tax deposits or by requesting a refund on the IRS Form 941, Employer's Quarterly Federal Tax Return.

5.      The Families First Coronavirus Response Act (FFCR Act) required certain employers to provide employees with paid sick leave (sick leave) of up to 80 hours and expanded family and medical leave (family leave) of up to 10 weeks for specified reasons related to COVID-19.  The FFCR Act provides refundable tax credits that reimburse eligible employers for the cost of providing paid sick and family leave (SFL Credit) wages to employees for leave related to COVID-19.

6.      Eligible Employers can reduce their share of Social Security and/or Medicare tax deposits by the amount of their anticipated SFL credit on the IRS Form 941, Employer's Quarterly Federal Tax Return.  The SFL wages must have been paid to employees for qualified sick or family leave taken after March 31, 2020, and before October 1, 2021.

7.      The CARES Act also provided authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP"). The PPP was implemented by the Small Business Administration with support from the Department of the Treasury. In or about April 2020, Congress authorized over $300 billion in additional PPP funding.

8.      To obtain a PPP loan, a qualifying small business was required to submit a PPP loan application, which was signed by an authorized representative of the business, to a participating lender. The PPP loan application required the small business applicant (through its authorized representative) to acknowledge the program rules and make certain

affirmative certifications in order to be eligible for the PPP loan. In the PPP loan application, the small business applicant (through its authorized representative) was required to state, among other things, (a) its average monthly payroll expenses; and (b) the number of its employees. These figures were used to calculate the loan amount the small business is eligible to receive under the PPP. In addition, the small business applicant was required provide supporting documentation showing its payroll expenses.

9. A small business's PPP application was initially submitted to, and processed by, a participating lender, then transmitted for further review to the Small Business Administration ("SBA") to assess the applicant's eligibility. If the PPP loan application was approved, the participating lender funded the PPP loan using its own funds, and the loans were guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

10. Under the terms of the PPP, small business applicants could use PPP loan proceeds only for specified permissible expenses, which included payroll expenses, mortgage interest payments, rent payments, and utilities expenses. The PPP allowed the interest and principal on a PPP loan to be entirely forgiven if the small business applicant spent the loan proceeds on the specified expenses within a particular period of time and used a certain percentage of the PPP loan proceeds on payroll expenses.

11. When submitting an SBA PPP application, the small business applicant was explicitly warned, and required to acknowledge, that making a false statement in the application, and/or submitting false or fraudulent supporting documentation, is a violation of federal law.

12. Agee Pro Transit Service, LLC (Agee Transit) was a special needs transportation service created in Mississippi but not an Eligible Employer to receive FFCR Act SFL Credit or a PPP loan as it was not an active business during the applicable time.

13. Agee Professional Tax Service, LLC (Agee Tax) was a tax preparation service created in Mississippi but not an Eligible Employer to receive FFCR Act SFL Credit or a PPP loan as it was not an active business during the applicable time.

14. Robbie Reese DBA Loving Arms Learning Center was not an Eligible Employer to receive a PPP loan as it was not an active business during the applicable time.

## COUNTS 1-10

15. The allegations contained in paragraphs 1 through 14 are hereby realleged and incorporated by reference as though fully set forth herein.

16. Beginning on a date unknown to the government, but at least as early as February 14, 2022, and continuing through at least April 11, 2022, in Madison County in the Southern District of Mississippi, Northern Division, and elsewhere, defendant **ROBBIE REESE a/k/a Robbie Agee**, did knowingly devise and execute a scheme and artifice to defraud and obtain benefits, money and property by means of materially false and fraudulent pretenses and representations, and willfully and knowingly did embezzle, steal, purloin and/or knowingly convert to her own use or the use of another, property of the United States that is, greater than $1,000.00 in funds belonging to the United States of America, by receiving from the Internal Revenue Service, a governmental agency of the United States of America, certain Sick and Family Leave Credit benefits to which she knew she was not entitled.

17. The purpose of the scheme and artifice to defraud was for the defendant

4

to unlawfully obtain Sick and Family Leave Credit funds or benefits to which she was not legally entitled.

18. It was part of the scheme and artifice that the defendant electronically filed ten false Forms 941 on behalf of Agee Transit and Agee Tax to obtain refunds or benefits to which she knew she was not legally entitled.

19. The Mississippi Department of Employment Security (MDES) is the state governmental entity to which businesses in Mississippi register, report file and pay unemployment taxes.

20. MDES does not have a record of Agee Tax in their system and Agee Transit did not have an MDES account until on or about March 1, 2022, when it registered as a new employer. Neither company paid employees qualified sick and family leave wages during the time period on the Form 941's submitted by Agee Transit or AP Tax.

21. Upon receiving U.S. government checks from the IRS, **ROBBIE REESE a/k/a Robbie Agee** deposited them in an account with Members Exchange Credit Union ("Members Exchange") in Madison County in the Northern Division of the Southern District of Mississippi.

22. As a result of her scheme, **ROBBIE REESE a/k/a Robbie Agee**, fraudulently obtained a total of more than $1,100,000.00 in SFL Credit funds or benefits.

23. Each of the following deposits constitutes a separate count of this Indictment:

5

| COUNT | COMPANY | DEPOSIT DATE | IRS CHECK AMOUNT DEPOSITED |
|---|---|---|---|
| 1 | Agee Tax | 2/14/2022 | $83,945.03 |
| 2 | Agee Transit | 2/22/2022 | $58,071.76 |
| 3 | Agee Tax | 2/22/2022 | $156,059.60 |
| 4 | Agee Transit | 3/8/2022 | $102,994.00 |
| 5 | Agee Tax | 3/8/2022 | $243,724.57 |
| 6 | Agee Tax | 4/11/2022 | $97,440.58 |
| 7 | Agee Tax | 4/11/2022 | $103,769.39 |
| 8 | Agee Tax | 4/11/2022 | $95,275.65 |
| 9 | Agee Transit | 4/11/2022 | $85,028.35 |
| 10 | Agee Tax | 4/11/2022 | $87,500.20 |

All in violation of Title 18, United States Code, Section 641.

## COUNTS 11-16

24. The allegations contained in paragraphs 1 through 23 are hereby realleged and incorporated by reference as though fully set forth herein.

25. From in or about April 2020 through in or about May 2021, in Madison County in the Northern Division of the Southern District of Mississippi and elsewhere, the defendant, **ROBBIE REESE a/k/a Robbie Agee**, did knowingly devise and

6

execute a scheme and artifice to defraud and obtain benefits, money and property by means of materially false and fraudulent pretenses and representations, and willfully and knowingly did embezzle, steal, purloin and/or knowingly convert to her own use or the use of another, property of the United States that is, greater than $1,000.00 in funds belonging to the United States of America, certain Paycheck Protection Program benefits to which she knew she was not entitled, said benefits guaranteed by the Small Business Administration, a governmental agency of the United States of America.

26. Defendant **ROBBIE REESE a/k/a Robbie Agee** applied for three PPP loans using false and fraudulent information about her purportedly active companies, Agee Pro Transit Service LLC, Agee Professional Tax Service LLC, and Robbie Reese DBA Loving Arms Learning Center, with the intent to defraud, steal, and convert the proceeds of the PPP loans for defendant **ROBBIE REESE'S a/k/a Robbie Agee's** personal use and without any intent to use the proceeds thereof for any authorized purpose. These materially false and fraudulent pretenses, representations and promises made by **ROBBIE REESE a/k/a Robbie Agee** induced Members Exchange Credit Union (MECU) to deposit benefits from PPP loans guaranteed by the SBA to the aforementioned companies of **ROBBIE REESE a/k/a Robbie Agee** in the amount of about $146,210.00.

*PPP loan number 7833697303*

27. It was part of this scheme that on or about April 30, 2020, Defendant **ROBBIE REESE a/k/a Robbie Agee** submitted an application for PPP loan number 7833697303 to Members Exchange Credit Union (MECU) to fund a PPP loan

guaranteed by the SBA in the name of her purportedly active company, Agee Pro Transit Service LLC. Defendant **ROBBIE REESE a/k/a Robbie Agee** provided her personal address as Agee Pro Transit Service LLC's address.

28.     Defendant **ROBBIE REESE a/k/a Robbie Agee** falsely and fraudulently submitted in the application for PPP loan number 7833697303 for Agee Pro Transit Service LLC a false IRS Schedule C for 2019, claiming one employee as of the date of the application, and that its gross income in 2019 was $41,224. The application identified the defendant as the Principal/Sole Proprietor of the purported business.

29.     These representations were materially false and fraudulent. Agee Pro Transit Service LLC was not an active business eligible for any PPP funding. The MDES has no record of Agee Pro Transit Service LLC until March 1, 2022.

30.     PPP loan number 7833697303 was handled by Members Exchange on a delegated basis by the SBA. On or about May 5, 2020, as a result of the fraudulent scheme described above, and the materially false and fraudulent information supplied by Defendant **ROBBIE REESE a/k/a Robbie Agee**, Members Exchange deposited $5,120.00 into Agee Pro Transit Service LLC's Members Exchange checking account, said business checking account having been opened on May 4, 2020.

31.     It was part of this scheme that on or about February 3, 2021, Defendant **ROBBIE REESE a/k/a Robbie Agee** submitted an application for second draw on the PPP loan, number 3713348405, to Members Exchange Credit Union (MECU) to fund a PPP loan guaranteed by the SBA in the name Agee Pro Transit Service LLC. As a result, the second draw was approved and Members Exchange deposited into Agee

Pro Transit Service LLC's Members Exchange checking account the amount of $6,002.00.

*PPP loan number 3587188501*

32. It was part of this scheme that on or about February 22, 2021, Defendant **ROBBIE REESE a/k/a Robbie Agee** submitted an application for PPP loan number 3587188501 to Members Exchange Credit Union (MECU) to fund a PPP loan guaranteed by the SBA in the name of her purportedly active company, Agee Professional Tax Service LLC. Defendant **ROBBIE REESE a/k/a Robbie Agee** provided her personal address as Agee Professional Tax Service LLC's address and opened a business checking account in its name with Members Exchange on February 8, 2021.

33. Defendant **ROBBIE REESE a/k/a Robbie Agee** falsely and fraudulently submitted in the application for PPP loan number 3587188501 for Agee Professional Tax Service LLC a false IRS Schedule C for 2019 and 2020, claiming four employees as of the date of the application, and with a calculated annual payroll of $224,220.00 which was false. The application identified the defendant as the Contact of the purported business.

34. These representations were materially false and fraudulent. Agee Professional Tax Service LLC was not an active business eligible for any PPP funding. The MDES has no record of Agee Professional Tax Service LLC.

35. PPP loan number 3587188501 was handled by Members Exchange on a delegated basis by the SBA. On or about February 24, 2021, as a result of the fraudulent scheme described above, and the materially false and fraudulent information

9

supplied by Defendant **ROBBIE REESE a/k/a Robbie Agee**, Members Exchange deposited $46,712.00 into Agee Professional Tax Service LLC's Members Exchange checking account.

36. It was part of this scheme that on or about May 12, 2021, Defendant **ROBBIE REESE a/k/a Robbie Agee** submitted an application for second draw on the PPP loan, number 1611759003, to fund a PPP loan guaranteed by the SBA in the name Agee Professional Tax Service LLC. As a result, the second draw was approved and Members Exchange deposited into Agee Professional Tax Service LLC's Members Exchange checking account the amount of $46,712.00.

*PPP loan number 7368908610*

37. It was part of this scheme that on or about March 22, 2021, Defendant **ROBBIE REESE a/k/a Robbie Agee** submitted an application for PPP loan number 7368908610 to fund a PPP loan guaranteed by the SBA in the name of her purportedly active company, Robbie Reese DBA Loving Arms Learning Center. Defendant **ROBBIE REESE a/k/a Robbie Agee** provided her personal address as Loving Arms Learning Center's address.

38. Defendant **ROBBIE REESE a/k/a Robbie Agee** falsely and fraudulently submitted in the application for PPP loan number 7368908610 for Loving Arms Learning Center a false IRS Schedule C for 2019, claiming one employee as of the date of the application, and that its gross income in 2019 was $99,996.00. The application identified the defendant as the Principal/Sole Proprietor of the purported business.

39. These representations were materially false and fraudulent. Robbie

Reese DBA Loving Arms Learning Center was not an active business eligible for any PPP funding. The MDES has no record of a business in the name of Robbie Reese DBA Loving Arms Learning Center nor does the Mississippi Secretary of State.

40. PPP loan number 7368908610 was handled by Members Exchange on a delegated basis by the SBA. On or about March 24, 2021, as a result of the fraudulent scheme described above, and the materially false and fraudulent information supplied by Defendant **ROBBIE REESE a/k/a Robbie Agee**, Members Exchange deposited $20,832.00 into Loving Arms Learning Center's Members Exchange checking account, said account having been opened the same day.

41. It was part of this scheme that on or about May 12, 2021, Defendant **ROBBIE REESE a/k/a Robbie Agee** submitted an application for second draw on the PPP loan, number 1354799002, to fund a PPP loan guaranteed by the SBA in the name Loving Arms Learning Center. As a result, the second draw was approved and Members Exchange deposited into Loving Arms Learning Center's Members Exchange checking account the amount of $20,832.00.

42. On or about the dates listed below, in Madison County in the Northern Division of the Southern District of Mississippi and elsewhere, Defendant **ROBBIE REESE a/k/a Robbie Agee**, for the purpose of executing this scheme and artifice to defraud and attempting to do so, caused to be deposited SBA guaranteed benefits, each deposit constituting a separate count of this Indictment:

| COUNT | DATE OF DEPOSIT | DESCRIPTION |
|---|---|---|
| 11 | 5/5/2020 | SBA Loan Application, PPP Loan 7833697303 in the name of Agee Pro Transit Service LLC and received $5120.00 |
| 12 | 2/6/2021 | SBA Second Draw Loan Application, PPP Loan 3713348405 in the name of Agee Pro Transit Service LLC and received $6,002.00 |
| 13 | 2/24/2021 | SBA Loan Application, PPP Loan 3587188501 in the name of Agee Professional Tax Service LLC and received $46,712.00 |
| 14 | 5/17/2021 | SBA Second Draw Loan Application, PPP Loan 1611759003 in the name of Agee Professional Tax Service LLC and received $46,712.00 |
| 15 | 3/24/2021 | SBA Loan Application, PPP Loan 7368908610 in the name of Robbie Reese DBA Loving Arms Learning Center and received $20,832.00 |
| 16 | 5/17/2021 | SBA Second Draw Loan Application, PPP Loan 1354799002 in the name of Robbie Reese DBA Loving Arms Learning Center and received $20,832.00 |

All in violation of Title 18, United States Code, Section 641.

COUNTS 17-24

43.   The allegations contained in paragraphs 1 through 42 are hereby realleged and incorporated by reference as though fully set forth herein.

44.   On or about the dates listed below, in Madison County in the Northern Division of the Southern District of Mississippi and elsewhere, Defendant **ROBBIE REESE a/k/a Robbie Agee**, did knowingly engage and attempt to engage in the following monetary transactions by, through or to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, to wit:

12

wrongful conversion of federal benefits, in violation of Title 18, United States Code, Sections 641.

45. Each of the following constitutes a separate count of this Indictment:

| COUNT | PURCHASER | DATE | TRANSACTION |
|---|---|---|---|
| 17 | Robbie Reese | 2/28/2022 | Payment of $61,345.75 to Porsche of Jackson for 2021 Infiniti Q60 |
| 18 | Robbie Reese | 3/8/2022 | Payment of $27,837.60 to Mac Haik dealership for 2016 BMW purchase |
| 19 | Robbie Reese | 3/18/2022 | Payment of $281,900.00 for a house at 1002 Silver Cir. in Pearl, MS |
| 20 | Agee Transit | 4/11/2022 | Payment of $34,481.00 to CarMax for 2020 Dodge Charger |
| 21 | Agee Transit | 4/15/2022 | Purchase from Ashley Home Stores for $10,218.41 |
| 22 | Agee Tax | 4/15/2022 | Purchase from Ross Furniture for $11,000.00 |
| 23 | Agee Tax | 4/19/2022 | Purchase from Ross Furniture for $13,972.23 |
| 24 | Agee Transit | 4/27/2022 | Payment of $100,185.00 to Jackson-Empire Truck Sales for 2017 FTL |

All in violation of Title 18, United States Code, Section 1957.

### NOTICE OF INTENT TO SEEK CRIMINAL FORFEITURE

As a result of committing the offenses as alleged in this Indictment, the defendant shall forfeit to the United States all property involved in or traceable to property involved in the offenses, including but not limited to all proceeds obtained directly or indirectly from the offenses, and all

property used to facilitate the offenses. Further, if any property described above, as a result of any act or omission of the defendant: (a) cannot be located upon the exercise of due diligence; (b) has been transferred or sold to, or deposited with, a third party; (c) has been placed beyond the jurisdiction of the Court; (d) has been substantially diminished in value; or (e) has been commingled with other property, which cannot be divided without difficulty, then it is the intent of the United States to seek a judgment of forfeiture of any other property of the defendant, up to the value of the property described in this notice or any bill of particulars supporting it.

All pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(1); and Title 28, United States Code, Section 2461.

TODD W. GEE
United States Attorney

A TRUE BILL:
**S/SIGNATURE REDACTED**

Foreperson of the Grand Jury

This indictment was returned in open court by the foreperson or deputy foreperson of the Grand Jury on this the 13th day of December 2023.

UNITED STATES MAGISTRATE JUDGE